Marian WURTH, by Harry Gershenson, her Next Friend (Plaintiff), Appellant,

v.

John S. WURTH (Defendant), Respondent.

No. 29928.

St. Louis Court of Appeals.

Missouri.

May 6, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied June 5, 1958.

Harry Gershenson, St. Louis, for appellant.

Rene J. Lusser, Lusser, Morris & Burns, St. Louis, for respondent.

SAMUEL A. DEW, Special Commissioner.

The appellant, a girl 19 years of age and unmarried, brought this action against respondent, her father, in whose home she was living. She sued for damages because of personal injuries received by her while a passenger in respondent's automobile which he was operating. She received a verdict and judgment for $5,700. Respondent thereafter duly filed his motion to set aside the verdict and judgment and to enter judgment in his favor in accordance with his motion for a directed verdict theretofore filed at the close of all the evidence. The after-trial motion was sustained and accordingly the verdict and judgment were set aside and judgment entered for the respondent. This appeal was taken from the order of the court so made and from the judgment so entered.

For convenience and clarity the appellant and respondent will hereinafter be referred to, respectively, as the plaintiff and the defendant as they were in the trial court.

The petition charged the defendant with negligently causing and permitting the automobile operated by him, and in which plaintiff was a passenger, to skid and to run into the curb near Beck Avenue and Kingshighway in St. Louis, Missouri, on February 9, 1953, and to throw plaintiff to the sidewalk, resulting in serious injuries to the plaintiff, as pleaded. The specific negligence pleaded was excess speed (over 35 miles per hour), under the circumstances; failure to keep the automobile under control; and reckless and wanton operation of the car under the existing conditions. The answer admitted that plaintiff was a passenger in defendant's automobile while being operated by defendant at the time and place alleged, and denied all other allegations of the petition. The answer affirmatively pleaded that on February 9, 1953, plaintiff, daughter of the defendant, was under 21 years of age and an unemancipated minor and,

therefore, did not have the legal capacity to sue the defendant. The answer prayed that the court require a reply, but none was filed. However, the case was tried as if the new matter pleaded in the answer were duly denied.

In addition to the evidence pertaining to the personal injuries sustained and the hospital and medical expenses incurred and paid by the plaintiff, her evidence was in substance that the accident happened on January 9, 1953 (instead of February 9, 1953); that the plaintiff was born in St. Louis, Missouri, on May 24, 1933; that when the suit was filed on April 2, 1953, plaintiff as not yet 21 years of age; that she had never been married and had lived with her parents at the time of the accident and was still residing with them at the time of trial; that for more than a year prior to January 9, 1953, she had been employed at the office of the Telephone Company on Grand Avenue in St. Louis, and that it was the daily custom of her father, the defendant, to take her each morning in his automobile to her place of employment; that this was done for her accommodation; that defendant would then return home and later drive to his own place of employment. Plaintiff testified that on the date in question there was snow and some ice in patches on the streets on the way to plaintiff's destination; that defendant was driving north on Kingshighway about 25 miles per hour and turned east on Beck Avenue; that he then slowed down to about 15 or 20 miles per hour as he crossed some railroad tracks, and then resumed his former speed for about 200 or 250 feet; that plaintiff, seeing some glistening ice on the street ahead, called to her father: "Dad, you had better slow down. Look, it's icy here," whereupon defendant nodded his head, but continued his speed. She said the car then began to skid, turned around several times, slid to the north side of Beck Street and hit a light standard. The car doors flew open and plaintiff was thrown out.

Being recalled to the stand, plaintiff testified that she was earning $50 per week at her job when she was injured; that she used her earnings to pay board at her father's house and to pay her bills. The defendant offered no evidence.

At the close of the testimony, as stated, defendant moved for a directed verdict, which motion was overruled. One of the grounds assigned therein was that "Plaintiff, having been a minor at the time of the occurrence alleged in plaintiff's petition, and at the time of the commencement of the suit, cannot, under the law of the State of Missouri, recover against the defendant, said defendant then being the father of the plaintiff." The after-trial motion filed by the defendant to set aside the verdict and judgment and for judgment for defendant in accordance with his motion for directed verdict, contained several grounds, among which were the following, on which the court sustained the motion: "5. Because the verdict is for the wrong party and should have been for the defendant, John S. Wurth, and against plaintiff, Marian Wurth. 6. Because under the undisputed evidence the plaintiff at the time of the occurrence on January 9, 1953, was then a minor under the age of 21 years. * * * 9. Because, under Instruction No. 1 given to the jury at the request of the plaintiff, the jury was required to find that plaintiff on January 9, 1953, was a minor who had been completely emancipated by her parents, as to which said issue there was a failure of proof under the law of the State of Missouri. 10. Because plaintiff failed to sustain by competent, credible and sufficient evidence that plaintiff, on January 9, 1953, was then a completely emancipated minor. * * *"

Instruction No. 1, referred to in the after-trial motion, directed a verdict for plaintiff under the hypothesis of facts therein stated, and opened with the words: "The Court instructs the jury that if you find and believe from the evidence that on or about January 9, 1953, plaintiff was a minor who had been completely emancipated by her parents, if you so find, * * *." Instruction No. 5, thereafter given at the request of defendant, on the same subject, stated, in substance, that under the law of Missouri, a minor cannot sue his parent for personal injuries sustained through the negligence of the parent unless the minor at the time was completely emancipated; that complete emancipation of a minor means an entire surrender of all rights by the parent to the care, custody and earnings of the minor, and a renunciation by the parent of parental duties and the destruction of the parental relations; that the burden was upon the plaintiff to prove by the greater weight of the credible evidence that she was completely emancipated at the time in question; that if the jury found that such had not been proved by the greater weight of the credible evidence, the verdict should be for defendant. At the trial the defendant objected to the overruling of his motion for a directed verdict and to the giving of plaintiff's instructions. Plaintiff objected to the giving of defendant's instructions.

Plaintiff's Points I, II, III and IV may be merged into one and considered together as a single charge that the court erred in finding the verdict was for the wrong party despite the undisputed evidence and the verdict, and in finding that plaintiff had failed to prove her complete emancipation by competent, credible and sufficient evidence. Plaintiff's Points V, VI and VII are conclusions presented to support such charge, asserting that the jury's verdict determined the issue of emancipation; that there was an implied emancipation by the conduct of the parties and that it is not necessary in order to show emancipation that plaintiff's parents had announced it publicly. These supporting suggestions will necessarily be disposed of in the determination of the issue of complete emancipation.

Plaintiff in this appeal does not question the general rule in Missouri that an unemancipated minor cannot sue or

maintain an action against his parent for unintentional negligence committed within the scope of the relation of parent and child. In fact, after pointing out that all other issues had been clearly proved in her favor and disposed of by the verdict, she asserts that the only issue remaining in this appeal is that of the emancipation of the plaintiff, which she claims to have established by clear, competent, sufficient and undisputed evidence. Neither party has briefed any other issue.

■ In considering the effect of the emancipation of a minor upon the general rule stated, it is well to keep in mind the nature and requirements of the rule itself and the reasons for it. It was said in Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29: "The general rule, without doubt, is that such a child may not sue the parent in tort. 67 C.J.S. Parent and Child § 61(2), page 787; 39 Am.Jur. 735, sec. 90; 20 R.C.L. 631." The court further declared at page 29 of 263 S.W.2d that: "The two principal reasons assigned for denying the child a right to sue are that under the common law no such action could be maintained and that such suits are against public policy for the reason that to permit such actions would disturb the family relationship." A further reason was succinctly stated by the court in Cook v. Cook, 232 Mo.App. 994, 124 S.W.2d 675, at page 677: "There is no statutory provision for such a suit in this state. The common law is in force in this state except when changed by statute." The right of the parents to the care, custody and control of their minor children is a natural right paramount to the claims of all others except when the best interests of the child contravene. It is a right which public policy demands shall be held inviolate, "and not easily controlled by other considerations * * *." 67 C.J.S. Parent and Child § 11, page 635.

The case of Baker v. Baker, supra, and many other authorities recognize certain rare exceptions to the general rule withholding from a minor child the right of action against its parents for damages. Such cases involve circumstances such as assault and battery, willful mistreatment, conduct of an intoxicated parent, relationship of master and servant, and other situations where the acts complained of were not committed within the scope of true domestic relationship, or were not the acts of mere unintentional negligence. None of these appears in the case at hand.

■ One exception to the general rule, universally recognized by the authorities and occurring more frequently than those above specified, is that of emancipation of a minor. Such a status, "as employed in the law of parent and child, means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." 67 C.J.S. Parent and Child § 86, page 811. And in § 87 of that authority it is said: "It has been asserted as a general rule that emancipation of the child leaves the child, as far as the parent is concerned, free to act on its own responsibility and in accordance with its own will and pleasure, with the same independence as though it had attained majority." It is a matter to be determined by the intent of the parent. Spurgeon v. Mission State Bank, 8 Cir., 151 F.2d 702. It need not be "proclaimed from the housetops or accompany it by some token or ceremonial * * *" nor is it necessary that the minor "should cease to be a member of the father's family." Dierker, to use of Shoemake v. Hess, 54 Mo. 246. It may be accomplished by direct or implied agreement. Brosius v. Barker, 154 Mo.App. 657, 136 S.W. 18. But emancipation of a minor is never presumed. It is the burden of him who asserts it to prove it. Beebe v. Kansas City, 223 Mo.App. 642, 17 S.W.2d 608, 612; 39 Am.Jur. § 64, p. 705.

■■ Emancipation may be either partial or complete. It is complete only

where there is a "complete severance of the filial tie", and "partial emancipation is not to be given a scope beyond the parent's intention." Cafaro v. Cafaro, 118 N.J.L. 123, 191 A. 472, 474; 39 Am.Jur., § 64, page 705. The consent of a parent that a minor child may retain his earnings is not sufficient to prove complete emancipation. Such arrangement is entirely revocable at will. Beebe v. Kansas City, supra. Where there has been a complete emancipation by express agreement a minor occupies the same legal relation to his father as if he had arrived at full legal age. The legal duty of the parent to maintain and support him and defray his necessary expenses is then extinguished. Swenson v. Swenson, Mo. App., 227 S.W.2d 103, 105, 20 A.L.R.2d 1409. Such a severance of a filial tie must be established by clear, cogent and convincing evidence. Spurgeon v. Mission State Bank, supra. The relationship between parent and child is fundamentally related to public policy. Luster v. Luster, 299 Mass. 480, 13 N.E.2d 438; Meece v. Holland Furnace Co., 269 Ill.App. 164; Baker v. Baker, supra.

■ It is a question for the jury to determine the facts when an issue is raised of a minor's emancipation. It is a question of law for the court to determine whether the facts so established constitute a complete emancipation of the minor. 67 C.J.S. Parent and Child § 90 b, page 817.

■■ In view of the authorities on the question of complete emancipation we are constrained to rule that the plaintiff's evidence in the instant case falls short of the proof necessary to constitute a complete emancipation sufficient to overcome the wise and wholesome presumption imposed by the law and public policy to the contrary. The law will not permit the natural relationship between parent and minor child to be lightly controlled or disturbed by other considerations. We believe, as a matter of law, that the evidence was insufficient in the case at bar to prove that either party ever intended to terminate the defendant's rights and liability respecting his minor daughter, the plaintiff, as fully and completely as if she had attained her legal majority. Such a declaration or renunciation or extinguishment would be required by law to clothe the plaintiff with authority to maintain an action against her father for injuries to her through his unintentional negligence committed within the scope of the natural relation of father and minor child. Merely to show the plaintiff, while residing at her parents' home, was employed outside and used her moderate earnings to pay board and her other bills does not completely rebut the cautionary presumption with which the law protects the parent in the enjoyment of the normal parental relations. The preservation of the peace, harmony and security so vital to the family and home cannot so easily be accommodated to meet the ends of expediency.

The order of the trial court sustaining the defendant's motion for verdict in accordance with his motion for a directed verdict theretofore filed, and the action of the court in setting aside the verdict and judgment, and entering judgment for the defendant should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is hereby adopted as the opinion of the Court. The order of the trial court in sustaining defendant's motion to set aside the verdict and judgment and to enter a judgment for the defendant, and the action of the court setting aside the verdict and judgment and entering judgment are affirmed.

RUDDY, P. J., and ANDERSON, J., concur.